HOWARD ~~SILVER~~

~~STANLEY GREEN~~

PRESENT: ~~HONORABLE HOWARD SILVER~~
                          J.S.C.

At a STP Part   , of the Supreme
Court of the State of New York in
and for the County of Bronx at the
Courthouse located at 851 Grand
Concourse, Room 217, Bronx, New
York on the 28 day of June
2007.

**FAX TO: 212-557-4188**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-------------------------------------X
MARIA B. FIGUEIREDO, as Executrix of the
Estate of ANTONIO FIGUEIREDO, deceased
and MARIA B. FIGUEIREDO, Individually
Plaintiff,

                    -against-

NEW PALACE PAINTERS SUPPLY CO., INC.,
FRAN-JU, INC. and GERARDO MARCHESE, INC.,

                    Defendants.
-------------------------------------X

Index No. 8151/04

**ORDER TO
SHOW CAUSE**

Assigned:
Hon. Howard Silver

COURT & COUNSEL :

        Upon reading and filing the annexed affidavit of David P.

Kownacki, Esq. of the Law Office of David P. Kownacki, PC

attorneys for the plaintiff herein, sworn to on June 20, 2007,

let the defendants show cause before this Court at an STP Part

thereof, at the Courthouse located at 851 Grand Concourse, Bronx,

New York, Room 405A on the 20TH day of July ,2007, at

A.M., or as soon thereafter as counsel may be heard, why an

Order should not be made 1)Motion Pursuant to E.P.T.L. §

5-4.6 for an order to approve the settlement, disbursements,

attorney's fee and directing payment of the settlement, and;

2) Granting the claimant relief to extinguish any claimed

Great-West Healthcare lien asserted by ACS Recovery Services,

and; and for any and other relief that this Court may deem just, equitable and proper.

Sufficient cause appearing therefore, let PERSONAL service of a copy of this Order and a copy of the papers upon which it is based upon the attorney for the defendants on or before the 5th day of July , 2007, be deemed good and sufficient service.

E N T E R

HONORABLE
J. S. C.  STANLEY GREEN

HOWARD R. SILVER

EB250980181US

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
----------------------------------------X
MARIA B. FIGUEIREDO, as Executrix of the
Estate of ANTONIO FIGUEIREDO, deceased          Index No. 8151/04
and MARIA B. FIGUEIREDO, Individually,

                    Plaintiff,                  **AFFIDAVIT**

          - against -

NEW PALACE PAINTERS SUPPLY CO., INC.,
FRAN-JU, INC. and GERARDO MARCHESE, INC.,

                    Defendants.
----------------------------------------X
State of New York   )
                    )    ss.:
County of New York  )

    **David P. Kownacki, Esq.**, being duly sworn deposes and says:

    1.   I am trial counsel for the plaintiff in the above-entitled action and am familiar with the facts, circumstances and prior proceedings of this action.  This office was retained by Arnold Bernstein, Esq., who initiated this action.  This affidavit is submitted in support of the instant application, pursuant to section 5-4.6 of the Estates, Powers, and Trusts Law (E.P.T.L.), seeking an order: 1) approving this settlement in the amount of $2,800,000.00, based upon the merits of the action and the amount of the proposed settlement; 2) approving attorneys fees and other payable expenses; 3) ordering the defendants herein to pay all sums due and owing under the settlement agreement pursuant to C.P.L.R. § 5003-A; and 4) directing that this office deposit these settlement proceeds into an interest bearing account for the benefit of the distributees;5) granting the claimant relief to extinguish any claimed Great-West Healthcare lien asserted by ACS Recovery Services; and 6) for

such other and further relief as this Honorable Court deems just, proper and equitable. This application is being made by Order to Show Cause because in the 5th branch of the motion we are seeking relief against non-party ACS Recovery Services.

2.    This action is for damages for personal injuries and wrongful death. The trial was scheduled to begin on June 12, 2007, but we have been able to negotiate a settlement acceptable to both sides. The proposed settlement is for $2,800,000.00, ~~payable as follows: $1,000,000 to be paid by defendant NEW PALACE PAINTERS SUPPLY CO., INC. (through United America Bank), an additional $1,000,000 to be paid by defendant NEW PALACE PAINTERS CO., INC. (through One Beacon); an additional $150,000 from NEW PALACE PAINTERS SUPPLY CO., INC. (through AIG) to be paid in 90 days and be structured with an AIG approved company and defendant FRAN-JU, INC. is to pay $650,000.~~ All payments are guaranteed. See Exhibit "A" (signed settlement from mediator.) Given the risks of going to verdict and the facts of the case, as described below, this is an equitable settlement.

3. This action is grounded for catastrophic and ultimately fatal personal injuries suffered by the plaintiff's decedent Antonio Figueiredo, as a result of a construction site accident that occurred on January 22, 2003, while he was doing construction work at the premises known as 538 East 180th Street, County of Bronx, City and State of New York. The certified report of the Medical Examiner (Annexed as Ex. "B") documents her conclusions that Mr. Figueiredo suffered blunt impact injury to the head including: subscalpular hemorrhage; occipital fracture,

healing; subdural and epidural hemorrhage, organizing; subarachnoid hemorrhage, slight; moderate cerebral edema with bilateral transtentorial herniation.   Injuries to the torso include: contusion, left flank; bilateral rib fractures; vertebral fracture, T12, anamestic; lung with fat emboli; and pleural adhesions, left.   Mr. Figueiredo died on February 14, 2003.

4.   On or about October 21, 1985, A Last Will and Testament was issued by Antonio Figueiredo in which Mr. Figueiredo's widow, Maria Figueiredo, is appointed Executrix.  Following that appointment an action was commenced with the filing of a Summons and Verified Complaint, annexed hereto as Exhibit "C."  Issue was joined by service of Verified Answer from the defendants, a copy of which is annexed hereto as Exhibit "D."  A Preliminary Conference was held and an order issued, a copy of which is annexed hereto as Exhibit "E."  A Bill of Particulars was prepared and served, annexed hereto as Exhibit "F." An examination before trial of the plaintiff Maria Figueiredo and her son Miguel Figueiredo were completed, depositions of defendants and a non-party witness were conducted.

5.   The Note of Issue was filed and this office filed a summary judgment motion. Plaintiff obtained summary judgment on liability on October 27, 2006, and a damages only trial was scheduled in Supreme Court, Bronx County.

6.   Numerous settlement negotiations took place and on or about May 31, 2007 at a mediation held by Mediator Michael McAllister in his offices located at JAMS 45 Broadway, 28th

Floor, New York, New York 10006 , it was agreed that this matter would be resolved for the sum of $2,800,000.00.  This application is made within sixty days of the proposed resolution of this matter.

7.    Pursuant to E.P.T.L. § 5-4.6, we ask this Honorable Court to approve this settlement in the amount of $ 2,800,000.00 as fair and reasonable.  It will permit plaintiff to avoid the risks and expense of trial and enable Mrs. Figueiredo and her son to put this sad episode behind them.

8.    Pursuant to E.P.T.L. § 5-4.6, we ask this Honorable Court to authorize and empower Maria Figueiredo, as Executrix of The Estate of Antonio Figueiredo , to execute a general release and to sign all papers necessary to collect the $2,800,000.00 settlement.

9.     Pursuant to E.P.T.L. § 5-4.6, we request an order directing that the sum of $2,800,000.00 be paid by the defendants and their insurance companies in accordance with the terms specified and agreed to.  We ask that this order direct the money be placed in an interest bearing escrow account until such time that distribution is directed by Surrogate's Court.  We further request that by this order the Court approve the following expenses and attorney's fee:

| | |
|---|---|
| Records | $957.07 |
| Investigation | 41.00 |
| Index | 210.00 |
| RJI | 95.00 |
| Four motions | 180.00 |
| Note of Issue | 95.00 |
| Surrogates' filing fee | 1,250.00 |
| Lawyers service | 156.50 |
| Service of process | 157.50 |

```
ebt transcripts          1,244.47
Copy Service                53.83
Trial subpoenas            349.00
Appeal                     526.70
Notice of Appeal            65.00
Experts                 $3,100.00

Total Expenses:         $8,481.07
```

After these expenses are deducted, the net amount is

$2,791,518.93. The retainer agreement, annexed hereto as Exhibit

"G," provides for attorney's fees totaling one third of the

recovery after deduction of expenses. Accordingly, the total

attorney's fee is $930,506.31 and will be shared between this

office and Arnold Bernstein, Esq., pursuant to our prior

agreement. This will leave a net settlement of $1,861,012.62,

exclusive of the claimed lien, discussed *infra*.

    10. By this application, we request that this Court approve

payment to this office of disbursements in the amount of

$8,481.07 and attorney's fees in the amount of $930,506.31, upon

submission to this Court, by written correspondence, of proof of

filing a petition for allocation and distribution in the

Surrogate's Court on behalf of the Decedent's Estate.

    11. Pursuant to E.P.T.L. § 5-4.6, the written approval by

this Court of the compromise described above is conclusive

evidence of the adequacy of the compromise in any proceeding in

the Surrogates's Court for the final settlement of the account of

such executrix or personal representative. We will continue to

serve as attorneys for the Estate until entry of a final decree

in the Surrogate's Court.

## ALLEGED LIEN

12.  On or about November 15, 2006, this office received an initial letter from ACS Recovery Services (hereinafter ACS), on behalf of Great-West Healthcare, which claimed that as a result of the plaintiff's decedent's injuries, Great-West Healthcare had expended certain sums of money for medical care on behalf of plaintiff, pursuant to a health insurance policy, and that said sums would be considered a lien against any recovery in this action. (a copy of said letter is annexed hereto as Exhibit "H").

13.  In response to their letter received on November 15, 2006, this office contacted ACS by letter dated November 16, 2006 to determine on what basis they claimed a lien, and demanding a copy of the policy under which benefits were paid (a copy of said letter is annexed hereto as Exhibit "H"). ACS advised in a letter dated November 28, 2006 that work related injuries were not covered by the claimant's health plan. They later sent this office a letter dated April 4, 2007 with a claimed lien of $51,419.26 but no contract (a copy of said letters are annexed hereto as Exhibit "H"). Thereafter, on April 10, 2007 this office again wrote to ACS acknowledging receipt of their letter and advising them that we did not recognize their right to a lien.

14.  ACS does not state grounds upon which their lien is based.  The Unites States Supreme Court recently addressed Medicaid liens in <u>Arkansas Department of Health and Human Services v. Ahlborn</u>, 126 S.Ct. 1752 (May 1, 2006) overruling the New York Court of Appeals' holdings in <u>Calvanese v. Calvanese</u>, 93

N.Y. 2d 111 (1999) and <u>Gold v. United Health Services Hospitals</u>,
95 N.Y. 2d 683 (2001) which previously governed recovery of
Medicaid payments in personal injury law suits, <u>Lugo ex rel. Lugo</u>
<u>v. Beth Israel Medical Center</u>, 819 N.Y. 2d 892, 2006 N.Y. Slip
Op. 26340 (Sup. Ct. N.Y. Co. 2006).  The recovery of funds by
Medicaid is now limited to such portion of a settlement as is
specifically allotted to payment for medical care and expenses,
<u>Arkansas Department of Health and Human Services v. Ahlborn</u>,
supra.

15.  Although ACS does not site any specific contractual
language giving rise to a lien herein, it is respectfully
submitted that The United States Supreme Court's logic applies to
this situation as well.  There was no claim in the Bill of
Particulars for medical expenses.  Indeed, any recovery for
medical expenses would be the subject of a collateral source
hearing and there would be a set off for any amount paid by an
insurance company.  See CPLR §4545.  That same insurance company
is now trying to recoup benefits paid.  Because the settlement at
bar does not specify payment for medical expenses, none should be
recoverable herein by ACS or Great-West Healthcare.

16.  Binding Court of Appeals and Appellate Division
precedents have expressly held that where, as here, the parties
expressly attest that a settlement is solely for pain and
suffering, and any claim for reimbursement of expenses is waived,
a health insurer cannot exert a lien or a right of subrogation
against the proceeds of said settlement.  <u>See Teichman v.</u>
<u>Community Hospital of Western Suffolk</u>, 87 N.Y.2d 514, 521, 640

N.Y.S.2d 472, 475, 663 N.E.2d 628, 631 (1996); <u>Berry v. Saint</u>
<u>Peter's Hospital of the City of New York</u>, 250 A.D.2d 63, 68-69,
678 N.Y.S.2d 674, 678(3d Dep't 1998); <u>Independent Health</u>
<u>Association v. Grabenstatter</u>, 254 A.D.2d 722, 724, 678 N.Y.S.2d
220, 221 (4th Dep't 1998).

17.   In <u>Teichman</u>, the Court of Appeals held as follows with
regard to a health insurer's lien: "The unambiguous paragraph of
the Plan falls far short of these requirements. The refund
provision simply states that if the insured is "repaid" for all
or some of its medical expenses, appellant "will have the right
to a refund." The Plan does not identify property subject to the
right of refund; it does not describe the property in such a way
as to make identification possible; and it does not state the
parties' intention that the property be "held, given or
transferred as security for [an] obligation." (*James*, 256 N.Y.
at 303, 176 N.E. 401; *see also, Datlof v. Turetsky*, 111 A.D.2d
364, 365, 489 N.Y.S.2d 353.)

18. No prior request for the relief sought herein has heretofore been made.

**WHEREFORE**, it is requested that this application be granted
in its entirety, along with such other and further relief that
this Honorable Court deems just, proper and equitable.

_____
DAVID P. KOWNACKI

Sworn to before me this
20th day of June 2007

_____
Notary Public

ANDREW D. LEFFT
Notary Public, State of New York
No. 02LE6077903
Qualified in New York County
Commission Expires July 22, 20 10

Exhibit A

## Settlement Agreement

_Antonia Figueiredo_

_et al_

**Plaintiff(s):**

_vs._

_New Parlone Painting_

_et al_

**Defendant (s):**

The undersigned Plaintiff and Defendant have agreed to settle their pending suit by the defendant paying and the plaintiff accepting the sum of:

_Two million, eight hundred Thousand dollars_       ($ _2,800,000_ )

as and for complete settlement of all claims by the Plaintiff against the Defendant.

Defendant shall pay the above sum to the Plaintiff as soon as possible together with appropriate releases and a stipulation for dismissal of the pending suit. Plaintiff shall pay all liens and claims involved in this action and hold Defendant harmless and free of any responsibility therefore.

This agreement is binding upon each of the parties hereto as evidenced by their signatures.

Dated: _5/3/07_

_[signature]_                    _[signature]_      _Wade Clark Mulcahy_
                                                     _by Nicole Y Brown_
                                                     _∆ Fran-Ju, Inc._
**Attorney for Plaintiff**        **Defendant Representative**

_AFG - $150,000 to be paid
in 90 days and be started
w/ AFG approved company._

Signatures witnessed by:

_[signature]_

**Mediator**

_Fran Ju Inc. $ 650,000_

_New Parlace Painting Supply Co Inc - $1 mill - United to
Carriers other than AIG to                               $1 mill - use Br
                                                           sign of AFG_

Exhibit B



# OFFICE OF CHIEF MEDICAL EXAMINER
## CITY OF NEW YORK

## REPORT OF AUTOPSY



**Name of Decedent:** Antonio Figueiredo

**M.E. Case #:** BX03-00563

**Autopsy Performed by:** James Gill, M.D.

**Date of Autopsy:** Feb. 15, 2003

## FINAL DIAGNOSES

I.  BLUNT IMPACT INJURY OF HEAD:
    A. SUBSCALPULAR HEMORRHAGE.
    B. OCCIPITAL FRACTURE, HEALING.
    C. SUBDURAL AND EPIDURAL HEMORRHAGE, ORGANIZING.
    D. SUBARACHNOID HEMORRHAGE, SLIGHT.
    E. MODERATE CEREBRAL EDEMA WITH BILATERAL TRANSTENTORIAL HERNIATION.
    F. SEE NEUROPATHOLOGY REPORT.
    G. DILANTIN THERAPY FOR POST TRAUMATIC SEIZURE PROPHYLAXIS.

II.  BLUNT IMPACT INJURY OF TORSO:
    A. CONTUSION, LEFT FLANK.
    B. BILATERAL RIB FRACTURES.
    C. VERTEBRAL FRACTURE, T12, ANAMNESTIC.
    D. LUNG WITH FAT EMBOLI.
    E. PLEURAL ADHESIONS, LEFT.

III.  ESOPHAGEAL EROSION.

IV.  STATUS-POST ATTEMPTED RESUSCITATION.

---

**CAUSE OF DEATH:**      BLUNT INJURIES OF HEAD AND TRUNK.

**MANNER OF DEATH:**      ACCIDENT (FALL FROM SCAFFOLD).

THIS IS A TRUE COPY
Office of the Chief Medical Examiner
This record cannot be released without
prior consent from the Office of Chief
Medical Examiner, New York City, N.Y.

ZOILA SANCHEZ  4.29.03

BX03-00563                    **ANTONIO FIGUEIREDO**                    Page 2

## OFFICE OF CHIEF MEDICAL EXAMINER
## CITY OF NEW YORK

### REPORT OF AUTOPSY

### CASE NO. BX03-00563

*I hereby certify that I, James Gill, M.D., Deputy Medical Examiner, have performed an autopsy on the body of **Antonio Figueiredo**, on February 15, 2003, commencing at 8:30 AM, in the Bronx Mortuary of the Office of Chief Medical Examiner of the City of New York. This autopsy was performed in the presence of Dr. Smiddy.*

## EXTERNAL EXAMINATION:
The body is of a well-developed, well-nourished, average-framed, 5' 9", 170 lb Hispanic man whose appearance is consistent with the given age of 52 years. The slightly curly black-gray hair measures less than 3". There is facial stubble. The nose and facial bones are intact. The eyes have brown irides and the conjunctivae are without hemorrhage, petechiae, or jaundice. The oral cavity has natural teeth and an atraumatic mucosa. The chest is barrel shaped with deformity of the anterior left (subsequent internal examination reveals flail rib fractures). The extremities are unremarkable. There are no surgical scars or tattoos. The external genitalia are those of a normal uncircumcised man.

## POSTMORTEM CHANGES:
There is full symmetrical rigor mortis of the upper and lower extremities. There is non-fixed posterior purple lividity. The body is cool.

## THERAPEUTIC PROCEDURES:
There is a right femoral triple lumen catheter. There are ecchymoses of the posterior hands. There is a healing 1" incision in the lateral left chest area (Comment: Consistent with chest tube site).

## INJURIES, EXTERNAL AND INTERNAL:
There is moderate occipital subscalpular hemorrhage with a healing occipital partially depressed triangular fracture measuring approximately 3" with radiating healing linear fractures centrally. There is adhesion of the right frontal lobe to the dura. The brain and spinal cord are retained for neuropathologic consultation.

## B.  BLUNT IMPACT INJURY OF TORSO:
There is irregular blue ecchymoses of the left flank. There are anterolateral fractures of the left #3-7 ribs with adjacent hemorrhage and hemorrhage surrounding the posterior left #3-5 ribs. There are anterior right rib fractures (#2-5) with adjacent hemorrhage. There are adhesions of the left lung. There is a marked adhesion of the aorta to the spinal column. There is a fracture at T12 (anamnestic).

The spinal cord is submitted for neuropathologic examination. There are no pelvic fractures. There is hemorrhagic adhesion of the left visceral pleura. There are no lacerations of internal organs. There is approximately 200 cc of bloody fluid in the left pleural cavity and approximately 30 cc of bloody fluid in the pericardial sac.

## INTERNAL EXAMINATION:

**BODY CAVITY:** The organs are in their normal situs. There are moderate left pleural adhesions with approximately 200 cc of bloody fluid in the left pleural cavity. There is no hemorrhage or adhesion of the abdominal cavity.

**HEAD:** There is no epidural hemorrhage. The brain weighs 1600 gm. The brain is retained for neuropathologic consultation.

**NECK:** The cervical vertebrae, hyoid bone, tracheal and laryngeal cartilages, and paratracheal soft tissues are without trauma. The upper airway is patent.

**CARDIOVASCULAR SYSTEM:** The heart weighs 390 gm and has a normal distribution of right predominant coronary arteries without atherosclerotic stenosis of the epicardial vessels. The myocardium is homogeneous, dark-red, and firm without pallor, hemorrhage, softening, or fibrosis. The left ventricle wall is 1.5 and the right is 0.4 cm thick. The endocardial surfaces and four cardiac valves are unremarkable. The aorta is with slight atherosclerosis. The venae cavae and pulmonary arteries are without thrombus or embolus.

**RESPIRATORY SYSTEM:** The right lung weighs 690 gm and the left lung weighs 610 gm. The gray parenchyma is without masses or consolidations. There is focal pleural adhesion and hemorrhage on the left. The bronchi are unremarkable.

**LIVER, GALLBLADDER, PANCREAS:** The liver weighs 2100 gm and has an intact capsule and brown parenchyma without fibrous or slippery texture. The distended gallbladder contains approximately 60 cc of green bile without stones. The pancreas is unremarkable in lobulation, color, and texture.

**HEMIC AND LYMPH NODES:** The spleen weighs 330 gm and has an intact capsule. The color, red and white pulp, and consistency are unremarkable. There are no enlarged lymph nodes. The bone marrow is unremarkable.

**GENITOURINARY SYSTEM:** The right kidney weighs 200 gm and the left weighs 220 gm. Each kidney has a smooth red-brown surface and an unremarkable architecture and vasculature. The ureters maintain uniform caliber into an unremarkable bladder. The bladder contains approximately 150 cc of urine. The prostate is not enlarged. The testes are unremarkable.

**ENDOCRINE SYSTEM:** The pituitary, thyroid, and adrenal glands are normal in color, size, and consistency.

BX03-00563                **ANTONIO FIGUEIREDO**                **Page 4**

**DIGESTIVE SYSTEM:** The esophagus is unremarkable. There is a focal less than 0.5 cm erosion of the gastroesophageal junction. The stomach contains approximately 200 cc of dark gray-black non-descript fluid. The gastric mucosa, small and large intestine, and rectum are unremarkable. The small and large intestine contains tan-brown stool. The vermiform appendix is present.

**MUSCULOSKELETAL SYSTEM:** The clavicles, sternum, and pelvis are without fracture. The musculature is normally distributed and unremarkable. The spinal cord is submitted for neuropathologic examination.

**HISTOPATHOLOGY:**
Sections are submitted for Microscopic analysis. A separate report will be issued.

**TOXICOLOGY:**
Specimens are submitted for toxicologic analysis. A separate report will be issued.

**NEUROPATHOLOGY CONSULTATION:**
A separate report will be issued.

James Gill, M.D.
Deputy Medical Examiner

JG:wwd
DRAFT
02/16/03:jg
4/25/03:jg
Job No. 00-18505
Computer No. 40300563

**OFFICE OF THE NEW YORK CITY MEDICAL EXAMINER**
*NEUROPATHOLOGY REPORT*
**CASE NUMBER: B03-00563**

**NAME OF DECEDENT: ANTONIO FIGUEIREDO**
**DR. GILL PERFORMED THE AUTOPSY ON 2/15/03.**
**DRS. ARMBRUSTMACHER AND MELINEK EXAMINED THE BRAIN ON 3/4/03.**

**GROSS EXAMINATION:**          Brain weight: 1600 gm.

The specimen is the dura and brain and spinal cord (with dura) of an adult.

The cerebral dura has a 0.1 cm thick brown epidural hemorrhage over the midline posterior falx and an 0.2 - 0.3 cm thick orange-brown organizing right parietal-occipital subdural membrane which is adherent to the dura and has a poorly formed inner membrane.

The brain is moderately swollen with bilateral uncal grooves which measure 0.7 cm from the medial margin. There is no tonsillar herniation or cerebral midline shift. There is a 4 x 5 cm area of slight, thin subarachnoid hemorrhage over the left parietal lobe. The leptomeninges are thin, delicate and transparent. The cerebral gyri are of normal size, configuration and consistency. The external aspects of the brainstem and cerebellum are not remarkable. The arteries at the base of the brain follow a normal distribution and are free of atherosclerosis.

Coronal sections of the cerebrum reveal no focal lesions in the cortex, white matter or deep nuclear structures. Sections of the brainstem and cerebellum show no focal abnormalities. The ventricles are of normal size and configuration.

Spinal cord with dura from upper cervical to cauda equina levels shows no external abnormality. There is no epidural, subdural or subarachnoid hemorrhage. Transverse sections of the cord at 1.5 cm intervals are unremarkable.

**PHOTOGRAPHS:**   None.

**MICROSCOPIC EXAMINATION:**

H & E stained sections:

1. Frontal lobe - not remarkable
2. Hippocampus - not remarkable
3. Thalamus - not remarkable
4. Cerebellum - not remarkable
5. Medulla - not remarkable
6. Dura - organizing subdural membrane and epidural membranes with delicate thin-walled capillaries, scattered yellow pigment-laden macrophages and foci of acute hemorrhage with red cell ghosts.
7. Spinal cord - not remarkable

**DIAGNOSIS:**

I.      **BLUNT TRAUMA TO HEAD (SEE DR. GILL'S REPORT) WITH:**

   **A.        EPIDURAL HEMORRHAGE, MIDLINE POSTERIOR FALX.**
   **B.        ORGANIZING SUBDURAL MEMBRANE, RIGHT PARIETAL-OCCIPITAL.**
   **C.        SLIGHT SUBARACHNOID HEMORRHAGE, LEFT PARIETAL.**
   **D.        MODERATE CEREBRAL EDEMA WITH BILATERAL TRANS-TENTORIAL HERNIATION.**

**JUDY MELINEK M.D./VERNON ARMBRUSTMACHER M.D. 3/13/03**

The City of New York
Office of Chief Medical Examiner
520 First Avenue
New York, NY 10016

# Forensic Toxicology Laboratory

| | | | |
|---|---|---|---|
| Deceased: **ANTONIO FIGUEIREDO** | | M.E. Case No.: **BX0300563** | Lab. No.: **0791/03** |

| | |
|---|---|
| Autopsy By: Dr. Gill | Autopsy Date: 02/15/03 |

Specimens Received:
**Blood, Bile, Brain, Gastric Content, Liver, Urine, Vitreous Humour**

| | |
|---|---|
| Specimens Received in Laboratory By: Anthony Grogan | Date Received: 02/18/03 |

Equivalents: 1.0 mcg/mL = 1.0 mg/L = 0.1 mg/dL = 1000 ng/mL          1.0 mcg/g = 1.0 mg/kg = 0.1 mg/100g = 1000 ng/g

### *Results*

**Blood**

| | | |
|---|---|---|
| Phenytoin | 2.9 mg/L | LC |
| Ethanol | Not detected | GC |
| Barbiturates | Not detected | LC |
| Carbamazepine | Not detected | LC |
| Benzodiazepines | Not detected | GC/MS |

**Urine**

| | | |
|---|---|---|
| Benzodiazepines | Not detected | GC/MS |
| Opiates | Not detected | EI |
| Benzoylecgonine | Not detected | EI |
| Phencyclidine | Not detected | EI |
| Cannabinoids | Not detected | EI |
| Methadone | Not detected | EI |
| Amphetamines | Not detected | EI |
| Barbiturates | Not detected | EI |
| Salicylates | Not detected | CT |
| Acetaminophen | Not detected | CT |
| Basic drugs | Not detected | GC |

Page 1 of 1

| | | Rev. 3/25/98 |
|---|---|---|
| CT = Color Test | EI = Enzyme Immunoassay | |
| GC = Gas Chromatography | GC/MS = Gas Chromatography/Mass Spectrometry | |
| ISE = Ion Selective Electrode | LC = Liquid Chromatography | |
| RIA = Radio Immunoassay | SP = Spectrophotometry | |
| TLC = Thin Layer Chromatography | < = Less than | |

Signed: *Marina Stajic*
Dr. Marina Stajic
Date: 03/11/03

at




**The City of New York**
**Office of Chief Medical Examiner**
**New York, N.Y. 10016**

**REPORT OF**
**MICROSCOPIC EXAMINATION**

Name of Decedent: Antonio Figueiredo
Histology Lab #: 0301000

M.E. Case #: BX-03-0563
Date of Autopsy: 2/15/03

---

MICROSCOPIC DESCRIPTIONS:
Tissue or Organ x # of fragments and/or levels     (#= slide ID number)

LUNG x M (#1,3):
Lung with focal hemorrhage and intravascular adipocytes.

LIVER x 1 (#2):
Liver with bacterial colonies.

KIDNEY x 1 (#2):
Kidney with bacterial colonies.

James Gill, M.D.
*Printed Name/ Date*

*Signature*/April 25, 2003                                    M.D.

Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
---------------------------------------x
MARIA B. FIGUEIREDO, as Executrix of the
Estate of ANTONIO FIGUEIREDO, deceased,
and MARIA B. FIGUEIREDO individually,

                    Plaintiff,

    -against-

NEW PALACE PAINTERS SUPPLY CO. INC.
FRAN-JU, INC. and GERARDO MARCHESE,
INC.,

                 Defendants.
---------------------------------------x

Index No.:
Date Purchased

Plaintiff designates
**BRONX** County as the
Place of Trial

**S U M M O N S**
The basis of venue is
Principal place of
Business of defendants
Plaintiff resides at
46 Edgewood Avenue
Yonkers, NY 10704

To the above named Defendant(s):

    **YOU ARE HEREBY SUMMONED** to answer the complaint in this action
and to serve a copy of your answer, of, if the complaint is not
served with this summons, to serve a notice of appearance, on
Plaintiff(s) Attorneys within twenty (20) days after the service of
this summons, exclusive of the day of service (or within thirty (30)
days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your
failure to appear or answer, judgment will be taken against you by
default for the relief demanded in the complaint.

Dated: White Plains, NY
      February 9, 2004

          Yours etc.,

          LAW OFFICES OF
          ARNOLD I. BERNSTEIN

          By:_____
            ARNOLD I. BERNSTEIN

          Attorneys for Plaintiff(s)
          599 West Hartsdale Avenue
          White Plains, NY 10607
          (914) 997-6400

**DEFENDANTS' ADDRESS(ES):**
NEW PALACE PAINTERS SUPPLY CO. INC.      FRAN-JU, INC.
c/o Secretary of State                   c/o Secretary of State

GERARDO MARCHESE, INC.
c/o Secretary of State

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------x
MARIA B. FIGUEIREDO, as Executrix of the
Estate of ANTONIO FIGUEIREDO, deceased,
and MARIA B. FIGUIERDO, Individually,

                       Plaintiff,

        -against-

NEW PALACE PAINTERS SUPPLY CO. INC.
FRAN-JU, INC. and GERARDO MARCHESE, INC.,

                       Defendants.
------------------------------------------x

8151-04

**VERIFIED COMPLAINT**

Index No.

     Plaintiff, complaining of the defendants, by her attorney, LAW OFFICES OF ARNOLD I. BERNSTEIN, hereby alleges the following upon information and belief:

### AS AND FOR A FIRST CAUSE OF ACTION
### ON BEHALF OF PLAINTIFF MARIA B. FIGUEIREDO, AS
### EXECUTRIX OF THE ESTATE OF ANTONIO FIGUEIREDO

    1.    That on or about April 11, 2003, plaintiff MARIA B. FIGUEIREDO was duly appointed Executrix of the Estate of ANTONIO FIGUEIREDO, deceased, by Order of the Honorable Anthony A. Scarpino, Jr., Surrogate of the County of Westchester, and has duly qualified as such and is now acting in said capacity.

    2.    That on or about April 11, 2003, Limited Letters Testamentary were issued and plaintiff MARIA B. FIGUEIREDO was duly appointed fiduciary of the Estate of decedent ANTONIO FIGUEIREDO.

    3.    That at all times hereinafter mentioned, defendant NEW PALACE PAINTERS SUPPLY CO. INC. (hereinafter referred to as defendant "NEW PALACE"), was a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

    4.    That at all times hereinafter mentioned, defendant NEW PALACE transacted business within the State of New York, with its

principal executive office located in the County of Bronx, City and State of New York.

5. That at all times hereinafter mentioned, defendant FRAN-JU, INC. (hereinafter referred to as defendant "FRAN-JU"), was a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

6. That at all times hereinafter mentioned, defendant FRAN-JU transacted business within the State of New York, with its principal executive office located in the County of Bronx, City and State of New York.

7. That at all times hereinafter mentioned, defendant GERARDO MARCHESE, INC. (hereinafter referred to as defendant "MARCHESE"), was a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

8. That at all times hereinafter mentioned, defendant MARCHESE transacted business within the State of New York, with its principal executive office located in the County of Bronx, City and State of New York.

9. That at all times hereinafter mentioned, defendant NEW PALACE was the owner of premises located at 534 East 180th Street, County of Bronx, City and State of New York (hereinafter referred to as the "subject premises").

10. That at all times hereinafter mentioned, defendant NEW PALACE was the owner of premises located at 538 East 180th Street, County of Bronx, City and State of New York (hereinafter referred to as the "subject premises").

11. That at all times hereinafter mentioned, defendant NEW PALACE was the lessor of the subject premises.

12. That at all times hereinafter mentioned, defendant NEW PALACE was the lessee of the subject premises.

13. That at all times hereinafter mentioned, defendant NEW PALACE, its agents, servants and/or employees operated the subject premises.

14. That at all times hereinafter mentioned, defendant NEW PALACE, its agents, servants and/or employees managed the subject premises.

15. That at all times hereinafter mentioned, defendant NEW PALACE, its agents, servants and/or employees maintained the subject premises.

16. That at all times hereinafter mentioned, defendant NEW PALACE, its agents, servants and/or employees controlled the subject premises.

17. That on or prior to January 22, 2003, defendant NEW PALACE, its authorized agents, servants and/or employees, entered into a contract or written agreement with defendant MARCHESE with reference to performing work, labor, renovation and/or services at the subject premises.

18. That on or prior to January 22, 2003, defendant NEW PALACE, its agents, servants and/or employees hired and/or engaged defendant MARCHESE to perform work, labor, renovation and/or services at the subject premises.

19. That at all times hereinafter mentioned, defendant MARCHESE

3

performed work at the subject premises pursuant to contract and/or written agreement with defendant NEW PALACE.

20.  That on or prior to January 22, 2003, defendant MARCHESE was engaged by defendant NEW PALACE to at all times hereinafter mentioned, perform work, labor, renovation and/or services at the subject premises.

21.  That at all times hereinafter mentioned, defendant FRAN-JU was the owner of premises located at 534 East 180th Street, County of Bronx, City and State of New York (hereinafter referred to as the "subject premises").

22.  That at all times hereinafter mentioned, defendant FRAN-JU was the owner of premises located at 538 East 180th Street, County of Bronx, City and State of New York (hereinafter referred to as the "subject premises").

23.  That at all times hereinafter mentioned, defendant FRAN-JU was the lessor of the subject premises.

24.  That at all times hereinafter mentioned, defendant FRAN-JU was the lessee of the subject premises.

25.  That at all times hereinafter mentioned, defendant FRAN-JU, its agents, servants and/or employees operated the subject premises.

26.  That at all times hereinafter mentioned, defendant FRAN-JU, its agents, servants and/or employees managed the subject premises.

27.  That at all times hereinafter mentioned, defendant FRAN-JU, its agents, servants and/or employees maintained the subject premises.

28.  That at all times hereinafter mentioned, defendant FRAN-JU,

4

its agents, servants and/or employees controlled the subject premises.

29. That on or prior to January 22, 2003, defendant FRAN-JU, its authorized agents, servants and/or employees, entered into a contract or written agreement with defendant MARCHESE with reference to performing work, labor, renovation and/or services at the subject premises.

30. That on or prior to January 22, 2003, defendant FRAN-JU, its agents, servants and/or employees hired and/or engaged defendant MARCHESE to perform work, labor, renovation and/or services at the subject premises.

31. That at all times hereinafter mentioned, defendant MARCHESE performed work at the subject premises pursuant to contract and/or written agreement with defendant FRAN-JU.

32. That on or prior to January 22, 2003, defendant MARCHESE was engaged by defendant FRAN-JU to at all times hereinafter mentioned, perform work, labor, renovation and/or services at the subject premises.

33. That at all times hereinafter mentioned, defendant MARCHESE was the general contractor with reference to work being performed at the subject premises.

34. That at all times hereinafter mentioned, defendant FRAN-JU was the general contractor with reference to work being performed at the subject premises.

35. That at all times hereinafter mentioned, defendant NEW PALACE was the general contractor with reference to work being

5

performed at the subject premises.

36.    That at all times hereinafter mentioned, defendant MARCHESE was the construction manager with reference to work being performed at the subject premises.

37.    That at all times hereinafter mentioned, defendant FRAN-JU was the construction manager with reference to work being performed at the subject premises.

38.    That at all times hereinafter mentioned, defendant NEW PALACE was the construction manager with reference to work being performed at the subject premises.

39.    That at all times hereinafter mentioned, defendant MARCHESE was a contractor with reference to work being performed at the subject premises.

40.    That at all times hereinafter mentioned, plaintiff's decedent ANTONIO FIGUEIREDO was hired by defendant MARCHESE as an independent contractor to perform work, labor, renovation and/or services at the subject premises.

41.    That on January 22, 2003, at approximately 2:30 P.M., plaintiff's decedent ANTONIO FIGUEIREDO was lawfully working at the subject premises.

42.    That on January 22, 2003, at approximately 2:30 P.M., plaintiff's decedent ANTONIO FIGUEIREDO was lawfully working at the subject premises as an independent contractor for defendant MARCHESE.

43.    That on January 22, 2003, at approximately 2:30 P.M., plaintiff's decedent ANTONIO FIGUEIREDO was engaged in renovation work pursuant to his employment with defendant MARCHESE.

6

44. That on January 22, 2003, at approximately 2:30 P.M., the work being performed by plaintiff's decedent ANTONIO FIGUEIREDO at the subject premises was subject to the relevant and applicable provisions of the Labor Law of the State of New York.

45. That at the aforesaid time and place, plaintiff's decedent ANTONIO FIGUEIREDO, while lawfully engaged in his duties at the subject premises, was working upon a scaffold and/or elevated platform.

46. That at the aforesaid time and place, while plaintiff's decedent ANTONIO FIGUEIREDO was working upon a scaffold and/or elevated platform at the subject premises, the scaffold and/or elevated platform collapsed.

47. That at the aforesaid time and place, while plaintiff's decedent ANTONIO FIGUEIREDO was working upon a scaffold and/or elevated platform at the aforementioned location, the scaffold and/or elevated platform collapsed, causing plaintiff's decedent ANTONIO FIGUEIREDO to sustain serious personal injuries.

48. That the aforesaid scaffold and/or elevated platform was not so constructed, placed, managed and operated so as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein and using same including plaintiff's decedent herein.

49. That the aforementioned occurrence was caused solely and wholly as a result of the negligence, recklessness and carelessness of defendants herein, their agents, servants and/or employees in their ownership, operation, management, maintenance, control,

7

supervision and/or repair of the subject premises and/or by its violation or failure to comply with applicable and relevant provisions of the Labor Law of the State of New York, including Sections 200, 240(1) and 241(6) thereof as well as the applicable provisions of the NYCRR and New York Industrial Code applicable thereto.

50. That by reason of the foregoing, plaintiff's decedent ANTONIO FIGUEIREDO was caused to fall, thereby sustaining serious personal injuries.

51. That by reason of the foregoing, plaintiff's decedent suffered severe personal injuries as a result of which he died on February 14, 2003.

52. That by reason of the foregoing, plaintiff's decedent ANTONIO FIGUEIREDO died on February 14, 2003.

53. The plaintiff's decedent left him surviving as next of kin, his wife, MARIA B. FIGUEIREDO.

54. That decedent's death was wrongful within the meaning of New York's wrongful death laws.

55. That the causes of action asserted herein are not subject to the provisions of Article 16 of the CPLR and/or come within the stated exceptions found in CPLR Section 1602.

56. That by reason thereof, decedent's next-of kin has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction in this matter.

8

## AS AND FOR A SECOND CAUSE OF ACTION

57.   Plaintiff repeats and reiterates each and every allegation of this complaint as though more fully set forth at length herein.

58.   That prior to January 22, 2003, the defendants herein, their agents, servants and/or employees knew or should have known to furnish or erect, or cause to be furnished or erected for the performance of such labor at the premises as was then and there being performed, scaffolding, hoists, stays, ladders, slings, hangars, blocks, pulleys and/or other devices so constructed, placed and/or operated as to give plaintiff's decedent proper protection in the course of his employment.

59.   That prior to the happening of the occurrence herein, defendants, their agents, servants and/or employees knew, or in the exercise of reasonable care should have known, that the dangerous and defective conditions as aforesaid were in violation of relevant and applicable provisions of the Labor Law of the State of New York.

60.   That the defendants, by and through their agents, servants and/or employees were careless, reckless and negligent in the following respects, but not limited thereto: in failing to reasonably and properly inspect; in creating a dangerous and defective condition; in failing to erect and construct reasonably safe scaffolding; in failing to reasonably and properly provide a safe place to work; in failing to adequately supervise the site; in allowing and permitting a dangerous and defective condition to exist for an unreasonably long period of time; in failing to provide proper equipment and appurtenances which were necessary under the

9

circumstances; in failing to utilize those precautions which, under the circumstances were reasonable, necessary and required; and defendants were otherwise careless, reckless and negligent under the circumstances, all of which were a direct and proximate cause of the incident involved herein and the injuries and death sustained therefrom.

61. That upon information and belief, the dangerous, hazardous and defective condition complained of herein existed for a prolonged period of time prior to the happening of the occurrence herein, such that defendants, in the exercise of reasonable care knew or should have known of the dangerous and defective condition and defendants failed to timely remedy same.

62. Defendants herein, by their agents, servants and/or employees had actual notice or knowledge of the dangerous and defective condition complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff's decedent ANTONIO FIGUEIREDO to work.

63. Defendants herein, by their agents, servants and/or employees had constructive notice or knowledge of the dangerous and defective condition complained of herein and failed to timely and properly remedy same and provide a safe place for plaintiff's decedent ANTONIO FIGUEIREDO to work.

64. Defendants herein, by their agents, servants and/or employees created the dangerous and defective condition complained of herein.

65. That by reason of the foregoing negligence, plaintiff's

10

decedent ANTONIO FIGUEIREDO was caused to sustain serious personal injuries as a result of which he died on February 14, 2003.

66. That by reason of the foregoing negligence, plaintiff's decedent ANTONIO FIGUEIREDO died on February 14, 2003.

67. That by reason thereof, decedent's next-of-kin has been damaged in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction in this matter.

## AS AND FOR A THIRD CAUSE OF ACTION

68. Plaintiff repeats, reiterates and realleges each and every allegation of this complaint as though more fully set forth at length herein.

69. At all times hereinafter mentioned, the conduct of the defendants, their agents, servants and/or employees was governed by the New York Labor Law and more particularly, Labor Law Sections 200, 240(1) and 241(6) as well as the applicable provisions of the NYCRR and New York Industrial Code applicable thereto.

70. The defendants, their agents, servants and/or employees violated and/or failed to comply with the relevant and applicable provisions of the Labor Law, as aforesaid.

71. That said violations of the Labor Law caused and/or contributed to plaintiff's decedent's fall as aforesaid and his injuries and death therefrom.

72. That by reason of the foregoing, decedent's next-of-kin has been damaged in a sum of money having a present value which exceeds

the jurisdictional limits of all lower courts which would otherwise
have jurisdiction in this matter.

## AS AND FOR A FOURTH CAUSE OF ACTION

73.   Plaintiff repeats, reiterates and realleges each and every
allegation of this complaint as though more fully set forth at length
herein.

74.   That by reason of the foregoing, plaintiff's decedent,
ANTONIO FIGUEIREDO was caused to sustain serious, permanent personal
injuries and conscious pain and suffering from the time of the
occurrence until his death on February 14, 2003.

75.   That by reason of the foregoing, plaintiff claims damages
in a sum of money having a present value which exceeds the
jurisdictional limits of all lower courts which would otherwise have
jurisdiction in this matter.

WHEREFORE, plaintiff MARIA B. FIGUEIREDO, as Executrix, demands judgment against the defendants, jointly and severally, as follows:

in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction in this matter.

Dated: White Plains, NY
       February 9, 2004

                                    Respectfully submitted,

                                    LAW OFFICES OF
                                    ARNOLD I. BERNSTEIN

                                    By: _____
                                         ARNOLD I. BERNSTEIN
                                    Attorneys for Plaintiff(s)
                                    599 West Hartsdale Avenue
                                    White Plains, NY 10607
                                    (914) 997-6400

# VERIFICATION

STATE OF NEW YORK, COUNTY OF WESTCHESTER     ss.:

MARIA FIGUEIREDO, being sworn says:    I am the plaintiff in the action herein; I have read the annexed COMPLAINT and know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

_____
MARIA FIGUEIREDO

Sworn to before me this
____ day of February , 2004.

_____
NOTARY PUBLIC

ARNOLD I. BERNSTEIN
Notary Public, State of New York
No. 4625099
Qualified in Westchester County
Commission Expires August 31, 20__

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
================================================

MARIA B. FIGUEIREDO, as Executrix of the
Estate of ANTONIO FIGUEIREDO, deceased,
and MARIA B. FIGUIERDO, Individually,

                                    Plaintiff,

                                                INDEX NO.

            -against-


NEW PALACE PAINTERS SUPPLY CO. INC.
FRAN-JU, INC. and GERARDO MARCHESE, INC.,

                                    Defendants.
================================================

### SUMMONS AND VERIFIED COMPLAINT
================================================

LAW OFFICES OF
ARNOLD I. BERNSTEIN
Attorney for Plaintiff
599 West Hartsdale Avenue
White Plains, New York 10607
(914) 997-6400
================================================

**NOTICE OF ENTRY**
**Sir:** Please take notice that the within is a (certified) true copy of a
                                    duly entered in the office of
the Clerk of the within named Court on                    20
Dated:
================================================

**NOTICE OF SETTLEMENT**
**Sir:** Please take notice that a                of which the within
is a true copy will be presented for settlement to the          , one
of the judges of the within named Court, at
on the          day of                at              .M.
Dated:
================================================

Service of a copy of the within
is hereby admitted.
Dated:          20                    _____

Attorney(s) for: