

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ACS RECOVERY SERVICES, INC.,

                              Plaintiff,

- against -

MARIA B. FIGUEIREDO, as Executrix of the Estate
of Antonio Figueiredo, Deceased, and MARIA B.
FIGUEIREDO, Individually,

                              Defendants.

07 Civ. 7359 (CLB) (LMS)

**REPORT AND
RECOMMENDATION**

TO:    **THE HONORABLE CHARLES L. BRIEANT,
       UNITED STATES DISTRICT JUDGE**

Plaintiff ACS Recovery Services, Inc. (herein, "Plaintiff ACS"), as subrogee of Great-

West HealthCare, commenced the instant action against Defendant Maria Figueiredo (herein,

"Defendant"), both in her capacity as executrix of the estate of Antonio Figueiredo and in her

individual capacity, pursuant to the Employee Retirement Income Security Act (herein,

"ERISA"), 29 U.S.C. §§1001, *et seq.*, to recover sums paid by Great-West HealthCare for

medical care and treatment received by Antonio Figueiredo, the Defendant's deceased husband.

See Docket #1, Complaint (herein, "Comp.") at ¶¶1, 10, 15.  Plaintiff ACS seeks recovery from

the Defendant in the amount of $51,415.26, based upon the Defendant's settlement of an

independent state court wrongful death action she commenced against Antonio Figueiredo's

former employers in New York State Supreme Court, Bronx County.  See Comp. at ¶¶23-24.

Plaintiff ACS claims that it notified the Defendant that it held a purported lien on a portion of the

Defendant's settlement proceeds pursuant to an employee benefit plan governed by ERISA, but

that the Defendant "refused to recognize the [Plaintiff's] lien."  See Comp. at ¶25.

1

In lieu of an Answer, the Defendant has moved to dismiss the instant action pursuant to FED. R. CIV. P. 12(b)(6) on preclusion grounds. See Docket #16, Motion to Dismiss.[1] Specifically, the Defendant seeks to dismiss this action based upon the entry of a default judgment against Plaintiff ACS in the state court wrongful death action that extinguished Plaintiff ACS's purported lien. See Docket #16, Affidavit of David Kownacki, Esq. (herein, "Kownacki Aff.") at ¶¶5-6. Plaintiff ACS opposes the Defendant's motion to dismiss on the grounds that a default judgment is not afforded preclusive effect under New York law. See Docket #17, Plaintiff's Opposition. The instant motion was fully submitted on December 10, 2007. For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that the Defendant's motion to dismiss should be granted.

## BACKGROUND

1. Facts and Procedural History

The following facts are drawn from the Plaintiff's Complaint and the documents incorporated by reference therein. See Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991). Additionally, pertinent facts are drawn from the documents that have been appended to the parties' memoranda of law that were filed in connection with the state court wrongful death action and that the Court can take judicial notice of without converting the instant

---

[1] The Defendant suggests in her memorandum of law that "[t]he instant motion seeks summary judgment and an order of dismissal of the claim of plaintiff based on collateral estoppel." See Docket #16, Defendant's Memorandum of Law (herein, "Def's Mem.") at p. 3. As explained further below, because the Court can render an informed decision without consulting information extraneous to the Plaintiff's Complaint, and because preclusion is an affirmative defense that can be ruled upon on a motion to dismiss, I respectfully recommend that the instant motion should be construed as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) rather than as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

motion to dismiss into a motion for summary judgment. See Global Network Communications v. City of New York, 458 F.3d 150, 157 (2d Cir. 2006) (articulating public court records judicial notice exception to Rule 12(b) conversion); see also Sira v. Morton, 380 F.3d 57, 68 (2d Cir. 2004) (emphasizing that an absence of prejudice to a party can support finding that conversion of a motion to dismiss into a motion for summary judgment is unnecessary). The following recitation of fact is assumed to be true only for the purposes of the instant motion. See Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004) (noting that well pled facts are assumed to be true on a motion to dismiss).

Defendant Maria Figueiredo's husband, Antonio Figueiredo, sustained serious personal injuries in connection with his employment duties on January 22, 2003. See Comp. at ¶15. On February 14, 2003, Anontio Figueiredo died as a result of his injuries. See id. at ¶18. Plaintiff ACS avers that between January 22, 2003, and February 14, 2003, Great-West HealthCare paid medical care expenses on behalf of Anontio Figueiredo in the amount of $51,415.26. See id. at ¶17. Although Plaintiff ACS asserts in its Complaint that Anontio Figueiredo received medial benefits from Great-West HealthCare through his former employer, Plaintiff ACS has acknowledged that Antonio Figueiredo received medical benefits from Great-West HealthCare through the Defendant's employer. See Docket #17, Plaintiff's Opposition, Memorandum of Law in Opposition (herein, "Pl's Opp.") at p. 2 n.2.[2] Notwithstanding this factual error, Plaintiff ACS claims that Great-West HealthCare administered an employee welfare benefit plan within

---

[2] As the applicability of the pertinent health insurance coverage is not in dispute at this time, this error is of no moment. Additionally, Plaintiff ACS has stated that it will seek leave to amend the Complaint to correct this factual error should the motion to dismiss be denied. See Pl's Opp. at p. 2 n.2.

the meaning of ERISA, see 29 U.S.C. §1002(1), and that Plaintiff ACS is a fiduciary of that plan, thus giving it a right to seek recovery of medical benefits paid on behalf of Antonio Figueiredo. See Comp. at ¶¶12-13, 28.

The Defendant commenced a wrongful death action in New York State Supreme Court, Bronx County against Antonio Figueiredo's former employer sounding in negligence for Antonio Figueiredo's injuries and death. See Comp. at ¶21. On May 31, 2007, the Defendant agreed to resolve the state court action against one or more of the state court defendants by way of a $2,800,000 settlement. See id. at ¶23. Plaintiff ACS contends that it notified the Defendant prior to the effectuation of the settlement agreement that it held a lien on a portion of the settlement proceeds in the amount of $51,415.26, representing the amount Great-West HealthCare paid for medical care and treatment provided to Antonio Figueiredo, and that the Defendant was under a contractual responsibility to satisfy the lien with a portion of the state court settlement proceeds. See Comp. ¶24.

Although Plaintiff ACS maintains that "Mrs. Figueiredo, through her counsel, refused to recognize the Plan's lien," see Comp. at ¶25, the Defendant contends that the issue of the propriety of Plaintiff ACS's lien was presented to and ruled upon by the Honorable Howard R. Silver, New York State Supreme Court Justice, in the course of the state court wrongful death action. See Def's Mem. at pp. 2-3. On June 28, 2007, Justice Silver issued an Order to Show Cause submitted by the Defendant as to why the settlement agreement reached by the Defendant and the state court defendants should not be approved and as to why the Defendant's request to extinguish the Great-West HealthCare lien should not be granted. See Kownacki Aff., Ex. A, Order to Show Cause. The Defendant submits that the Order to Show Cause was personally

4

served upon Plaintiff ACS on July 2, 2007, pursuant to the state court's directive. See Kownacki Aff. at ¶6; see also id., Ex. B, Affidavit of Service on Plaintiff ACS Recovery.

On August 6, 2007, the return date for the Order to Show Cause, Justice Silver granted the Defendant's request to approve the settlement and to extinguish the lien asserted by Plaintiff ACS. See Kownacki Aff., Ex. D, State Court Order dated August 6, 2007. In his decision, Justice Silver noted that the "motion to approve the settlement and extinguish any claimed Great-West Healthcare lien asserted by ACS Recovery Services is granted on default." Id. Justice Silver also noted that "Letter requesting adjournment dated August 4, 2007, was faxed to Court on August 6, 2007, and plaintiff's attorney was assured by defendant's attorney on Friday Aug. 3 that he would be in Court today." Id. As referenced by Justice Silver in his order, counsel for Plaintiff ACS requested that the August 6, 2007, return date for the Order to Show Cause be adjourned in light of the fact that his firm had just been retained in the matter by ACS Recovery and that he was unable to attend the August 6, 2007, hearing because he would be away on vacation until August 13, 2007. See Kownacki Aff., Ex. C, Letter from Counsel for ACS Recovery to the Honorable Howard R. Silver dated August 4, 2007. Justice Silver also noted that his chambers received Plaintiff ACS's request for an adjournment on the morning of the return date of the Order to Show Cause, August 6, 2007. See Kownacki Aff., Ex. D, State Court Order dated August 6, 2007.

Plaintiff ACS commenced the instant action in this Court on August 17, 2007. See Docket #1, Complaint. On September 19, 2007, Justice Silver reissued his prior decision approving the Defendant's settlement agreement with the state court defendants and extinguishing Plaintiff ACS's lien. See Kownacki Aff., Ex D, Order. As explained by the

Defendant, Justice Silver reissued his prior order pursuant to the request of the Westchester County Surrogate's Court that he clarify the precise amount of attorney's fees awarded. See Kownacki Aff. at ¶6 n.2.

## DISCUSSION

A.    Rule 12(b)(6) Standard of Review

When considering a defendant's Rule 12(b) motion to dismiss, "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Raila, 355 F.3d at 119. Under this standard, "[d]ismissal is inappropriate unless it appears beyond a doubt that the plaintiff can prove no set of facts which entitle him or her to relief." Id. A Rule 12(b)(6) motion to dismiss thus challenges the legal sufficiency of the Plaintiffs' averments and only should be granted when "it appears beyond doubt that the Plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief," Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Put another way, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law," Neitzke v. Williams, 490 U.S. 319, 326 (1989), and granting a Rule 12(b)(6) motion to dismiss is considered a ruling on the merits of the Plaintiffs' claims, see Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006).

On a Rule 12(b)(6) motion to dismiss, it is appropriate for the court only to determine the legal sufficiency of the Complaint and not to weigh the evidence that may be presented at trial. See Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). As such, the Court may only consider the information contained in the four corners of the Complaint, including "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by

6

reference," or any other document that the complaint "relies heavily upon . . . render[ing] the

document integral to the complaint." Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d

Cir. 2002).

Second Circuit case law makes clear that affirmative defenses such as res judicata, also

known as claim preclusion, and collateral estoppel, also known as issue preclusion, are proper

arguments to submit to the Court for consideration on a motion to dismiss. See Conopco, Inc. v.

Roll Int'l, 231 F.3d 82, 86-87 (2d Cir. 2000) (explaining that res judicata is a proper basis for a

motion to dismiss for failure to state a claim when it is clear from the face of the complaint and

certain extraneous material that a plaintiff's claims are barred as a matter of law); Wachtmeister

v. Swiesz, 59 Fed. Appx. 428, 429 (2d Cir. 2003) (applying identical reasoning to assertion of

collateral estoppel on Rule 12(b)(6) motion to dismiss).  Accordingly, the Court may consider the

Defendant's motion to dismiss based upon collateral estoppel without converting it into a motion

for summary judgment.

B.    Principles of Res Judicata and Collateral Estoppel

Section 1738 of Title 28 of the United States Code, the federal full faith and credit

statute, provides that "[s]uch Acts, records and judicial proceedings or copies thereof, so

authenticated, shall have the same full faith and credit in every court within the United States . . .

as they have by law or usage in the courts of such State . . . from which they are taken."  Section

1738 implements the Full Faith and Credit Clause of the United States Constitution, Article IV,

§1, see Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 80 n.4 (1984), and pursuant to

this directive, "a federal court must give to a state-court judgment the same preclusive effect as

would be given that judgment under the law of the State in which the judgment was rendered,"

id. at 81. Because the operative judgment in question was rendered in New York, this Court must turn to New York law to determine how New York courts would treat the previously issued default in subsequent litigation. See id.

The doctrines of res judicata and collateral estoppel are distinct legal theories. See Allen v. McCurry, 449 U.S. 90, 94 (1980) (distinguishing between res judicata and collateral estoppel); Burgos v. Hopkins, 14 F.3d 787, 789-90 (2d Cir. 1994) ("Different rules and restrictions apply to each doctrine, and although some courts fail to distinguish between the two . . . it is important . . . to be cognizant of their distinctiveness); City of New York v. Welsbach Elec. Corp., 9 N.Y.3d 124, 2007 WL 3070887, at *2 (Oct. 23, 2007) (distinguishing between the application of res judicata and collateral estoppel under New York law). Res judicata, which is also known as claim preclusion, precludes a party or its privity from relitigating an issue that was raised in a prior proceeding and decided on the merits by a valid final judgment or from raising an issue that could have been raised in such a prior proceeding but was not. See Allen, 449 U.S. at 94; see also Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 347 (1999). Collateral estoppel, which is also known as issue preclusion, is a subspecies of the broader doctrine of res judicata and directs "that once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Allen, 449 U.S. at 94 (citing Montana v. United States, 440 U.S. 147, 153 n.5 (1979)); see also Ryan v. New York Telephone Co., 62 N.Y.2d 494, 500-01 (1984).

Because these two legal theories are distinct theories that have different legal elements, a finding that a party is precluded from relitigating a claim under res judicata does not necessarily mean that a party is precluded from relitigating an issue under collateral estoppel. See, e.g.,

8

Moccio v. New York State Office of Court Admin., 95 F.3d 195, 200 (2d Cir. 1996) (noting that

res judicata does not bar a subsequent §1983 lawsuit between the same parties after an Article 78

proceeding, but that collateral estoppel may preclude a party in the §1983 suit from relitigating

an issue necessarily decided during the Article 78 proceeding); Boorman v. Deutsch, 152 A.D.2d

48, 52-53 (1st Dep't 1989) (finding that res judicata is inapplicable to relitigation of claim but

that collateral estoppel bars relitigation of specific issue previously decided). The dichotomy

between res judicata and collateral estoppel is also present in the way each doctrine addresses a

previously rendered default judgment. See, e.g., 10 MOORE'S FEDERAL PRACTICE ¶55.50[2][a]

(3d ed. 2006) (highlighting that default judgments are usually afforded claim preclusive effect

under res judicata, but that default judgments are usually not afforded issue preclusive effect

under collateral estoppel).

Although the Defendant nominally relies upon collateral estoppel in the instant motion to

dismiss, see Def's Mem. at p. 3 ("The instant motion seeks . . . an order of dismissal of the claim

of plaintiff based on collateral estoppel."), Defendant's memorandum of law employs the phrases

claim preclusion and issue preclusion synonymously. Despite defense counsel's interchangeable

use of these terms, a review of the substance of the Defendant's memorandum of law leads me to

conclude, and respectfully recommend that Your Honor should conclude, that the Defendant's

motion to dismiss is predicated upon collateral estoppel and not based upon res judicata. The

Defendant's memorandum articulates the specific test for collateral estoppel, see Def's Mem. at

pp. 6-7 (noting that a party must have had a full and fair opportunity to litigate an issue in the

prior proceeding for collateral estoppel to apply); see also Def's Mem. at pp. 7-8 (reasserting

applicable legal standards of collateral estoppel), and Defendant's Reply Memorandum of Law,

9

which attempts to clarify the legal theory of her motion to dismiss, cites several New York State Appellate Division decisions that discuss the applicability of collateral estoppel to situations involving default judgments, see Docket #19, Defendant's Reply Memorandum of Law (herein, "Def's Reply") at pp. 5-7.  Additionally, the Defendant neither articulates nor relies upon the unique analytical test New York courts employ when considering whether claim preclusion should apply in the course of subsequent litigation, and the Defendant does not submit any argument as to whether Plaintiff ACS was a party to the state court action, whether it was in privity with a party to the state court action, or whether the state court's decision is a final decision.  See, e.g., Parker, 93 N.Y.2d at 347 (highlighting the identity of parties requirement for a finding that res judicata bars a party from relitigating a previously adjudicated claim and also noting that res judicata only applies after a valid final judgment has been rendered).

Accordingly, I conclude, and respectfully recommend that Your Honor should conclude, that because the primary legal arguments asserted by the Defendant in her motion to dismiss focus on the applicability of collateral estoppel to the facts of the instant dispute, the Defendant's motion to dismiss should be construed as raising a collateral estoppel affirmative defense.

C.    New York Principles of Collateral Estoppel

1.    Elements of Collateral Estoppel

"Under New York law, collateral estoppel prevents a party from relitigating an issue decided against that party in a prior adjudication.  It may be invoked to preclude a party from raising an issue (1) identical to an issue already decided (2) in a previous proceeding in which that party had a full and fair opportunity to litigate."  Fuchsberg & Fuchsberg v. Galizia, 300 F.3d 105, 109 (2d Cir. 2002).  The Second Circuit has explained that New York issue preclusion

10

includes a third element that is commonly overlooked by the courts: that "the issue that was previously raised must be decisive of the present action." Curry v. City of Syracuse, 316 F.3d 324, 331 n.4 (2d Cir. 2003) (explaining that a third element of collateral estoppel is required under New York law, but not required under federal law).

    2.    Preclusive Effect of a Default under New York Law

As a general rule, defaults are not afforded issue preclusive effect for the purposes of collateral estoppel under New York law. See Yoon v. Fordham Univ. Faculty, 263 F.3d 196, 202 n.7 (2d Cir. 2001) ("under New York law, collateral estoppel forecloses only those issues that have been 'actually litigated and determined in a prior action' and 'an issue is not actually litigated if there has been a default.' ") (quoting Pigliavento v. Tyler Equip. Corp., 233 A.D.2d 810, 811 (3d Dep't 1996)); see also Matter of Abady, 22 A.D.3d 71, 83 (1st Dep't 2005) (explaining that the general rule followed in New York is that defaults are not afforded issue preclusive effect). The Second Circuit has also opined that "the general rule is well-established that default judgments lack issue-preclusive effect." See In re Adler, 205 Fed. Appx. 856, 857-58 (2d Cir. 2006) (citing Abrams v. Interco, Inc., 719 F.2d 23, 34 n.9 (2d Cir. 1983) and Amato v. City of Saratoga Springs, 170 F.3d 311, 323 (2d Cir. 1999) (Jacobs, J., concurring)). New York courts substantiate this decision not to afford preclusive effect to a default on collateral estoppel by emphasizing that a default is not a merits-based decision, and that therefore the issues nominally resolved by a decision predicated on a default in prior litigation lack the sufficient identity with the issues raised in subsequent litigation. See Kaufman v. Eli Lilly and Co., 65 N.Y.2d 449, 456-57 (1985) ("If the issue has not been litigated, there is no identity of issues between the present action and the prior determination. An issue is not actually litigated

11

if, for example, there has been a default . . . ."). New York case law also highlights that there exists a strong policy argument against extending issue preclusive effect to a default in subsequent litigation because of the "destructive effect [affording issue preclusion to a default] has upon the rights of a defendant, who, in opting not to oppose one claim, finds that he [or she] loses another, a consequence which was never within his [or her] contemplation at the time of his [or her] default." Kossover v. Trattler, 82 A.D.2d 610, 613 (2d Dep't 1981) (Gibbons, J., concurring).

        Despite this general treatment afforded to a default in subsequent litigation under New York law, there also exists a robust minority rule employed by a number of New York courts that affords issue preclusive effect to default judgments in certain limited factual scenarios. See, e.g., Brown v. Suggs, 39 A.D.3d 395 (1st Dep't 2007); Matter of Abady, 22 A.D.3d at 83-85;[3] see also Evans v. Ottimo, 469 F.3d 278, 282-83 (2d Cir. 2006) (upholding the use of collateral estoppel in a bankruptcy proceeding for a previously rendered state court default). Specifically, the Appellate Division, First Department has afforded issue preclusive effect to a default in subsequent litigation where (1) there is evidence that a party has engaged in "conduct intentionally calculated to frustrate and impede the court to whose jurisdiction they submitted by their general appearance and by interposing an answer," Matter of Abady, 22 A.D.3d at 84 (quoting Kanat v. Ochsner, 301 A.D.2d 456, 458 (1st Dep't 2003)), or (2) where a party "appears

---

      [3] Matter of Abady is the primary articulation of this exception to the general rule that a default is not afforded issue preclusive effect. The Brown decision, a terse one page decision, merely cites Matter of Abady in support of the proposition that there exists an exception to the general rule that defaults are not afforded issue preclusive effect under New York law and offers no further insight into the parameters of this exception. See Brown, 39 A.D.3d 395. Defendant relies upon these cases in her Reply memorandum of law. See Def's Reply at p. 5.

in the prior action, yet willfully and deliberately refuses to participate in those litigation

proceedings, or abandons them, despite a full and fair opportunity to do so," id. at 85 (relying on

Matter of Latimore, 252 A.D.2d 217, 219-20 (1st Dep't 1999)). In dicta, the Second Circuit has

also suggested that a similar exception to the general rule against extending issue preclusive

effect to defaults exists in other jurisdictions where affording preclusive effect to a default is

necessary to sanction "sufficiently outrageous" and abusive conduct. See In re Adler, 205 Fed

Appx. at 857 n.2 (citing Third, Ninth and Eleventh Circuit case law honoring a default on

collateral estoppel).[4]

A review of the unique factual circumstances of this case, and of the policy

considerations articulated by the New York courts in support of the general rule against

extending issue preclusion to defaults, both lead me to conclude, and respectfully recommend

that Your Honor should conclude, that it is appropriate to deviate from the general rule against

extending issue preclusive effect to defaults and to apply the minority rule that honors a

previously issued default for collateral estoppel purposes.

The following facts illustrate why the state court's default judgment should be honored by

this Court. The state court issued an order to show cause on June 28, 2007, directed specifically

to ACS Recovery as subrogee of Great-West HealthCare and set a return date for August 6, 2007.

See Kownacki Aff., Ex. A, Order to Show Cause. In a letter dated Saturday, August 4, 2007,

counsel for ACS informed Justice Silver that "On Friday [August 3, 2007,] this firm was retained

---

[4] In In re Adler, however, the Second Circuit declined to consider whether such an
exception was appropriate in that case as there was no evidence of sufficiently opprobrious
conduct where "the time between serving the summons and complaint and the entry of default
judgment was less than four months." 205 Fed. Appx. at 857 n.2.

to represent ACS Recovery Services Inc. in the above-referenced action," and that

"Unfortunately, I am leaving today (Saturday) for vacation and will not be returning to New York

until Monday, August 13, 2007. Accordingly, we respectfully ask for an adjournment of the

order to show cause – at least to the extent that it seeks to extinguish ACS's lien – for two weeks,

until August 20, 2007." See Kownacki Aff., Ex. C. In his decision, Justice Silver noted that this

correspondence was faxed to his chambers on the morning of return date set for the order to show

cause, August 6, 2007, and that counsel for Mrs. Figueiredo had been "assured" that counsel for

ACS Recovery would be in court on August 6, 2007. See Kownacki Add., Ex. D. Less than two

weeks later, Plaintiff ACS commenced the instant action in this Court.

      Counsel for Plaintiff ACS was provided clear notice of the time and place of the order to

show cause before Justice Silver. Counsel for Plaintiff ACS corresponded with Justice Silver's

chambers, requested an adjournment, and without receiving a response from the court, elected

not to appear at the designated time and place assuming that the request for an adjournment

would be honored. Subsequent to Justice Silver's decision, counsel for ACS Recovery does not

appear to have requested reconsideration or re-argument on the order to show cause, but rather

has marshaled its efforts and commenced this parallel federal proceeding. Such a course of

action is akin to some of facts recited by the New York Appellate Division in situations where

previous defaults are honored on collateral estoppel. For example, in Matter of Abady, the First

Department underscored that a previously issued default should be honored in subsequent

litigation where a party "appears in the prior action, yet . . . abandons them, despite a full and fair

opportunity to [participate.]" 22 A.D.3d at 85. In rendering this observation, the Matter of

Abady panel relied heavily upon an earlier First Department decision, Matter of Latimore, in

14

which a previously rendered default was honored in subsequent litigation where the party against whom the default was entered "had ample opportunity to contest the allegations in the [prior] action, yet allowed a default judgment to be entered against her, failed to persuade the [prior court] to vacate said default and did not pursue her appeal." Matter of Abady, 22 A.D.3d at 84-85 (quoting Matter of Latimore, 252 A.D.2d at 219-20).

In the present case, counsel for Plaintiff ACS submitted itself to the jurisdiction of the state court by acknowledging the order to show cause and by requesting an adjournment to allow it the opportunity to mount a merits-based defense to the relief requested by Mrs. Figueiredo. See Kownacki Aff., Ex. C. Additionally, counsel for Plaintiff ACS appears to have jettisoned any attempt to petition the state court for reconsideration or re-argument on the order to show cause. The decision to forgo relief in state court and commence this action is particularly vexing to the undersigned as counsel for Plaintiff ACS asserted in its Complaint that the "[state court] action remains pending in Supreme Court, Bronx County," see Comp. at ¶22, and also asserted in its memorandum of law in opposition to the Defendant's motion to dismiss that "the state court judgment will remain subject to re opening upon a finding of 'excusable default' – which ACS believes it can show – for a period of one year following service of a copy of the order with written notice of its entry (on October 9, 2007) upon ACS. See CPLR §5015," see Pl's Opp. at p. 8 n.9.

Although counsel for Plaintiff ACS is correct on the general proposition of law that a party may file suit in federal court while a state court matter is pending final adjudication, see id., the fact that Plaintiff ACS elected to file suit in this forum and abandon – at least temporarily – recourse in state court by not filing a motion for reconsideration or for re-argument, or by not

15

filing an appeal to a higher state court, counsels in favor of finding that Plaintiff ACS had the opportunity to address the propriety of the default judgment on the merits in the state court forum, yet willfully elected to file suit in this Court in an attempt to relitigate an issue that it had an opportunity to litigate but failed to do. Moreover, the short period of time between the date of the state court's decision and the date of the filing of this action demonstrates a lack of respect for the state court decision and reflects an impetuous trial strategy designed to circumvent the decision and order of a state judicial officer. State court decisions made in furtherance of maintaining judicial economy and efficiency should be afforded comity and deference. These circumstances are analogous to the factors discussed by the First Department in Matter of Abady, in which it affirmed that default judgments should be afforded issue preclusive effect where a party "charted his [or her] own course by intentionally refusing to defend the charges [in a prior proceeding] despite a full and fair opportunity," and "by deliberate action, [has] refused to defend or litigate the charge or allegation that is the subject of the preclusion request [in the second action,]" 22 A.D.3d at 86.[5]

Moreover, the equitable concerns raised both by Justice Gibbons in Kossover and by several legal observers against extending issue preclusive effect to defaults are not present in this case. As identified above, the primary policy consideration against affording issue preclusive effect to a previously rendered default judgment is that a party may be unduly penalized by

---

[5] Although Matter of Abady and Matter of Latimore referenced that the parties against whom the default was issued "ultimately abandoned such opposition [in the prior proceeding] for long periods," Matter of Abady, 22 A.D.3d at 86, this factor was not dispositive to the application of the minority rule in those cases, and the shorter time period between the entry of the default and the commencement of this action should not militate against reliance on the minority rule.

defaulting in one action for a valid tactical reason, yet unknowingly foreclose recourse in a subsequent action. See Kossover, 82 A.D.2d at 613-14 (citing secondary authority that "almost universally condemn[s] the application of collateral estoppel to judgments by default . . ."). In the present case, however, such an equitable policy concern against penalizing a party for unintended consequences is not present. In fact, just the opposite is true: Plaintiff ACS seeks to relitigate the exact issue that was presented and resolved by default in the state court action. Plaintiff ACS was knowledgeable and aware of the issue raised in the state court forum, defaulted on that issue, and then placed the very same issue in controversy before a sister forum within an exceedingly short period of time. Such a course of conduct on the part of Plaintiff ACS suggests an effort to engage in forum shopping in order to relitigate an issue that it failed to address in a prior proceeding. As such, the inequities associated with extending issue preclusive effects to defaults identified above are not presented in this case.

In further support of the instant recommendation that the forceful minority rule employed by some New York courts should be utilized in this case, it is important to underscore that collateral estoppel is an equitable doctrine rooted in the principles of fairness and is designed to avoid the "relitigation of a decided issue and the possibility of an inconsistent result." Buechel v. Bain, 97 N.Y.2d 295, 303 (2001); see also Gilberg v. Barbieri, 53 N.Y.2d 285, 292 (1981) ("historically and necessarily collateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied."). The New York Court of Appeals has instructed that collateral estoppel is a malleable doctrine guided ultimately by consideration of whether "relitigation should be permitted in a particular case in light of . . . fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate

17

results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings . . . ." Buechel, 97 N.Y.2d at 303 (quoting Staatsburg Water Co. v. Staatsburg Fire Dist., 72 N.Y.2d 147, 153 (1998)).

 In light of the foregoing analysis, and the factors in support of the application of New York's minority rule affording a default issue preclusive effect for the purposes of collateral estoppel, I conclude, and respectfully recommend that Your Honor should conclude, that the prior state court default issued by Justice Silver can be used as the basis for a finding that Plaintiff ACS is collaterally estopped from relitigating the issue of whether it is entitled to a portion of the Defendant's state court settlement proceeds.

 3. Application of Collateral Estoppel to Previously Issued Default

 Having concluded that the previously issued default can serve as a basis for precluding Plaintiff ACS from relitigating an issue decided in the course of the state court action, the Court must now consider whether the attendant facts surrounding the issuance of the state court default support a finding that collateral estoppel prohibits Plaintiff ACS from relitigating the existence and propriety of its purported lien in this Court. See Burgos, 14 F.3d at 792 (enumerating the elements of collateral estoppel under New York law). "Under New York law . . .[t]here are two requirements for the application of collateral estoppel to an issue: (1) there must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and (2) there must have been a full and fair opportunity to contest the decision now said to be controlling." Id. (quoting Schwartz v. Public Administrator, 24 N.Y.2d 65, 71 (1969)). The party seeking the benefit of the application of collateral estoppel – here, the Defendant – has the burden of establishing the identity of issues adjudicated in the prior proceeding and presented for

18

reconsideration in the subsequent proceeding, and the party opposing the imposition of collateral estoppel – here, Plaintiff ACS – has the burden of establishing the absence of a full and fair opportunity to contest the issue in the prior proceeding.  See Buechel, 97 N.Y.2d at 304.

For the following reasons, I conclude that the Defendant has established that the issue decided in the prior state court action is identical to and determinative of the instant issue put before this Court and that Plaintiff ACS has failed to establish that it did not have a full and fair opportunity to litigate this issue in the prior state court action.

        a.      Identity of Issue

A review of the issue before the New York State Supreme Court and the issue asserted in the instant case leads me to conclude, and respectfully recommend that Your Honor should conclude, that the first element of collateral estoppel – the identity of issues presented – has been established.  In his June 28, 2007, order to show cause, Justice Silver explicitly directed that ACS Recovery was to show cause why, "an Order should not be made . . . [g]ranting the claimant [Defendant Figueiredo] relief to extinguish any claimed Great-West Healthcare lien asserted by ACS Recovery Services . . . ."  See Kownacki Aff., Ex. A, Order to Show Cause.  In his corresponding decision on the Order to Show Cause, Justice Silver ordered that "the lien asserted by ACS Recovery Services on behalf of Great-West Healthcare is extinguished . . . ."  See Kownacki Aff., Ex. D, Order.  Similarly, in its Complaint filed in this action, Plaintiff ACS averred that "[a]s a result of the [Great-West administered plan's] payment of medical expenses to or for the benefit of Antonio Figueiredo, [Great-West] acquired a subrogation lien – to the extent of amounts so paid – upon any recovery that his estate or Mrs. Figueiredo individually might obtain from any third-party in connection with his injuries."  See Comp. at ¶28.

Accordingly, a comparison of the issue ruled upon by the state court in the prior action –

the existence of the Great-West lien – and an issue necessary for the prosecution of the instant

action – the existence of the Great-West lien – demonstrates that "the issue in the [present] action

is identical to an issue which was raised, necessarily decided and material in the first action,"

Parker, 93 N.Y.2d at 349, and that therefore the first element of collateral estoppel has been

established.

        b.     Full and Fair Opportunity to Litigate Issue in Prior Proceeding

The second element necessary to establish issue preclusion focuses on whether the party

against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in

the prior proceeding. See Parker, 93 N.Y.2d at 349 (quoting Ryan, 62 N.Y.2d at 501). This

burden rests on Plaintiff ACS. Id. In evaluating this element, the New York Court of Appeals

has stressed the importance of considering the "realities of the prior litigation," including "the

nature of the forum and the importance of the claim . . . the incentive and initiative to litigate and

the actual extent of litigation, the competence and expertise of counsel, . . . [and] the differences

in the applicable law and the forseeability of future litigation." Ryan, 62 N.Y.2d at 501.

A review of these factors leads me to conclude, and respectfully recommend that Your

Honor should conclude, that Plaintiff ACS was provided a full and fair opportunity to litigate the

issue of the propriety of the lien in the state court action. Plaintiff ACS was personally served

with the Order to Show Cause and was given over a month to seek counsel or otherwise prepare

its argument in opposition to Mrs. Figueiredo's request to extinguish the lien on her settlement

proceeds. Additionally, the counsel that represented Plaintiff ACS in the state court action is the

same counsel that commenced this suit, and the gravity and scope of the issue pending in the

20

state court proceeding could not have been presented to Plaintiff ACS or its counsel in a more

concise or unequivocal fashion. Moreover, counsel for Plaintiff ACS evinced an intent to mount

a merits-based defense to the relief sought by Mrs. Figueiredo in the state court action and did

not otherwise suggest to the state court that it intended to litigate the issue elsewhere.

Accordingly, I conclude that the state court action provided Plaintiff ACS a sufficient

opportunity to litigate this issue and that, through counsel, Plaintiff ACS failed to avail itself of

this opportunity.

I note parenthetically that the instant recommendation that Plaintiff ACS had a sufficient

opportunity to litigate the issue of the existence and propriety of its purported lien on a portion of

the Defendant's state court settlement proceeds offers no implicit validation or endorsement of

the propriety of the state court's decision and order. As noted by the New York Court of

Appeals:

> The question as to whether a party has had a full and fair opportunity to contest a
> prior determination cannot be reduced to a formula. It cannot, for instance, be
> resolved by a finding that the party against whom the determination is asserted
> was accorded due process in the prior proceeding. The point of the inquiry, of
> course, is not to decide whether the prior determination should be vacated, but
> whether it should be given conclusive effect beyond the case in which it was
> made.

Gilberg, 53 N.Y.2d at 292.[6]

---

[6] In correspondence that was exchanged between counsel prior to the filing of the instant
motion to dismiss which was included in the Kownacki Affidavit submitted to this Court,
counsel for Plaintiff ACS suggested to defense counsel that "we understand that the Supreme
Court of New York, Bronx County, issued an order purporting to extinguish Great-West's lien.
However, the state court lacks jurisdiction over the issue of the enforceability of the . . . lien."
See Kownacki Aff., Ex. E, Letter from Counsel for ACS Recovery to Counsel for Defendant
Figueiredo, dated August 21, 2007. Pursuant to New York's principles of collateral estoppel,
this Report and Recommendation should not be construed as offering any opinion on the
propriety or validity of the state court's order extinguishing Plaintiff ACS Recovery's lien and

Accordingly, because a review of the process utilized in connection with the state court action leads me to conclude that Plaintiff ACS had a full and fair opportunity to answer the Defendant's request to extinguish the lien, and because Plaintiff ACS has not otherwise established that it was deprived a full and fair opportunity to litigate the issue in the state court proceeding, I conclude, and respectfully recommend that Your Honor should conclude, that the second element of collateral estoppel has been satisfied and that the default entered against Plaintiff ACS by the state court should be afforded issue preclusive effect by this Court.

## CONCLUSION

For the aforementioned reasons, I conclude, and respectfully recommend that Your Honor should conclude, that the prior state court default rendered against Plaintiff ACS should be afforded issue preclusive effect, that the Defendant's motion to dismiss based upon collateral estoppel should be granted, and Plaintiff ACS's Complaint should be dismissed.

---

(continued from previous page . . .)

should only be read as finding that the state court proceeding provided Plaintiff ACS with a sufficient opportunity to litigate this issue for the limited purposes of collateral estoppel. See Gilberg, 53 N.Y.2d at 292. Pursuant to well-established precedent, this Court is without authority to opine on the jurisdictional propriety or the merits of a state court's decisions. See, e.g., Exxon-Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005) (quoting Verizon Md., Inc. v. PSC, 535 U.S. 635, 644 n.3 (2002) ("The Rooker-Feldman doctrine merely recognizes that 28 U.S.C. §1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to [the Supreme Court,] see 28 U.S.C. §1257(a))).

Should Plaintiff ACS elect to pursue an appeal of the state court's decision, and should the state court's decision to extinguish the lien be modified or overturned, the decision to extend issue preclusive effect to the state court's default decision extinguishing Plaintiff ACS's lien would be rendered nugatory as there would be no prior adjudication of the issue in the previous litigation and the instant action could be reinstituted in this Court. See, e.g., Antonious v. Muhammad, 873 F. Supp. 817, 824 (S.D.N.Y. 1995) ("unless and until the state court judgments are reversed by the Appellate Division, Second Department, they continue to constitute final and binding adjudications.").

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(e), or a total of thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of The Honorable Charles L. Brieant at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Brieant.

Dated: January 14, 2008
       White Plains, New York

Respectfully Submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Honorable Charles L. Brieant, U.S.D.J.

Counsel of Record for Plaintiff ACS and Defendant Figueiredo